Our third case for today is Simonson v. Olejniczak. I was just about to introduce myself, Your Honor. May it please the Court, I'm Eric Simonson, Counsel for Plaintiff Appellant Barbara Simonson. We are appealing a grant of summary judgment by the District Court in which we contend, and I think the record shows, the District Court failed in a number of respects to follow the law. It's actually a very simple case. It can be easily clouded by a lot of things the defendants say, but it's very simple. My client entered into a legal services contract. That contract provided that she would be represented in litigation brought by her sister in an estate and trust matter. It was expanded shortly thereafter to include having the defendants file the necessary documents to close the estate. There was an estate and a trust. We don't have to go into the details of how this all fit together. A year later, it became apparent at the end of August of 2015 that the defendants were repudiating their obligations to file the estate documents. They then, in a dispute over fees, something that lawyers have all the time, good faith, there's no question in the record that this wasn't a good faith dispute over the amounts owed. There is no question in the record that plaintiffs paid a majority of the amounts that were invoiced. Is the theory that if you pay 51% of the amount billed, a failure to pay the other 49% is not a material breach? No, that's not the theory. What is the theory for this not being a material breach? In Wisconsin, the court looks at a series of factors, and those have to be analyzed by a court under a summary judgment standard. That is, not weighing the evidence, not making determinations as to credibility. If there is admissible evidence on both sides of an issue, it's left for the trier of fact. A trier of fact in this case would be a jury. When you go through what the court looked at and what the requirements are, it's not just the extent of the breach, although that's important. The factors laid out in the brief that the district court in fact tried to analyze a number of them in its initial order. In the reconsideration order, we pointed out that there was counter evidence on a lot of it, and that many of its conclusions, such as there was no chance that the defendants would get paid, that my client refused to pay them and would never pay them, were all adverse inferences from only a partial view of the record after ignoring evidence proffered by the plaintiffs in this case. So when you go through and look at those, there was not a proper summary judgment analysis made on that. Can you direct us to a Wisconsin case that treated anything remotely comparable to this as less than or even as a disputable material breach? I don't think that's the right question, and I don't have off the top of my head. That's my question. I understand, Your Honor. You can tell me why you don't think it's the right question. I'm not aware of any case that is comparable to this saying that there's a jury issue where one side is refusing to pay a very substantial portion of the price. Yeah, except that that's not the facts in this case. Well, she was not making the payments. She was insisting that the defendants wait until the estate was closed. They said, we're not going to be your banker anymore, right? That is correct. Now, the facts in the record in this case are that a large amount was paid in full and on time. Other progress payments were made while she was trying to have discussions as to the reasonableness and certain other matters that might have been overpaid or improperly paid. There is no suggestion that the defendants believed it was a material breach at all until July at most when they said, please pay us. You really have to pay. And by late August said, we're not going to do more until you pay us. You described that as an unambiguous repudiation, right? Well, they didn't say. They said that they refused to file the estate documents that they had agreed to do and said that they were going to go to the court to request permission to withdraw as counsel of record. You described it in your reply brief as an unambiguous repudiation. Of the obligation to file the estate documents. And there was no harm to your client until months later, correct? Well, until November. November 9th, correct. After August 24th, 2015, did she ask the defendants to communicate in a way that said, I want you to do more work for me? She included carbon. She copied them on correspondence that opposing counsel had written to her regarding various administrative matters. When also, when, when, when also counsel? Yes. Did she ask the defendants to do more legal work for her after this unambiguous repudiation on August 24th? The unambiguous repudiation was for the estate documents, not for the other representation. May I ask the question again? Yes. Is there evidence in the record that the plaintiff asked the defendants to do legal work after August 24th, 2015, when they said, until you pay us, we're not doing anything more? I don't believe, well, there is an ambiguity there. Their counsel was copied on various correspondence relating to what ultimately became the case. I'll take that as a no. No, I don't think so. I think you should take it as it is ambiguous. What's ambiguous? She copied her, who she thought was her counsel, on correspondence as well to, and her counsel, Mr. Kruger, was copied on correspondence to her from counsel to her sister. So it's not entirely clear that she didn't ask them to do anything. She made sure that they were aware of things. Thank you. The simple case here is that was there a contract and were, which there was, was it terminated? Well, it couldn't have been terminated until after the 24th of August, and there was literally no communication between defendants and my client where the defendants had mentioned anything about either the results of the probate court or their desire to terminate the contract, which had to be by reasonable notice. So the contract, we contend, continued all the way through. Whether or not my client was relying in a particular sense for particular services, she certainly was relying on them to represent her in court, and they did not. And as a result, she was removed, and the way it works in Wisconsin is that a probate court does not have the power to intervene in the actions of a personal representative or a trustee absent a finding of a breach of fiduciary duty. In this case, the court found a breach of fiduciary duty by failing to file estate documents that, in fact, she had filed in September and early October, and perhaps most importantly, for failing to show up at a hearing where she thought her lawyers were going to show up. And so that is the nature of the claim. Where is the evidence in the record that she expected her lawyers to show up? It's in her affidavit that was in front of the court. It's a very clear statement. And I guess this goes back to Judge Hamilton's questions. Was she having any direct communication? Is there anything in the record that she was having, other than copying them on e-mails? There were communications that went back and forth in September and October. I'm not sure I can point them out in the record. But nothing saying about the hearing? No. At that point, the motion to withdraw had been granted. She was unaware of that, and there's nothing in the record to suggest otherwise. There's nothing in the record to suggest that she was mailed, she was not the notification from the court, she was not provided the notification for the November 9th hearing. In fact, defendants were. This case is interesting to me because your client is a lawyer, and obviously there's some relaxing of standards for pro se litigants. But it defies common sense that she would not know the motion had been, or she wouldn't have called the clerk's office. What about this November 9th hearing? Why didn't she do something? I think she was relying on the fact that what she got, she got no official notice. Her understanding was that the court gave it, gives official notice to the parties. It did not in this case. There's no question about that in the record. She thought she had counsel who was copied on everything, who would tell her what to do, or at least tell her, hey, you haven't paid, maybe get a different lawyer. But at that point, other than her copying counsel, why is it reasonable for her to believe that they were still her lawyers at that point? Well, I think there was a lot of reason to believe. First of all, she never got actual termination of the contract that she was representing. That is not in dispute in the record. It is not in dispute in the record that she did not know of the outcome of the withdrawal motion. And in fact, that was not unusual, as there is evidence in the record in the affidavit of my client that oftentimes the judge took months to make decisions on routine matters. And so in the course of roughly a month and a half, it didn't surprise her, particularly because she had objected within five days and thought there might be hearing on that or something else. She had no idea that even before she was able to get her response papers in, in just two days, that the court had, in effect, granted the motion to withdraw. Given the fact that she had opposing counsel who was still copying them on correspondence, I don't think she had a reason to believe it. She's not a Wisconsin lawyer. She's not a litigator. And it seemed to me perfectly reasonable that experienced counsel who she thought were still representing her would give her a heads up on something. Mr. Simonson, I believe the record indicates that a week after the August 24th correspondence that you describe as an unambiguous repudiation, the plaintiff filed herself a petition to extend the time to close the estate.  What led her to do that herself? Well, she's allowed to do it herself. And I think she was concerned, given the defendant's repudiation of their promise to file this estate documents, that if she didn't do that in an effort to reduce and mitigate damages, she'd have a lot of problems. So she went ahead and did it herself in order to minimize any sort of problems for her, given the recalcitrance of the defendants. I will save the rest of my time for rebuttal. Thank you very much. Certainly, counsel. Mr. Scipio. Good morning, Your Honors. May it please the Court, my name is Attorney Vincent Scipio. Here I represent the defendant appellees Thomas Olanichak, Stephen Krieger, and the law firm of Conway Olanichak and Jerry. There are many reasons for this Court to affirm the District Court's order. As I state in our brief, the District Court chose to dismiss the plaintiff's claims because the undisputed evidence in the record was that she materially breached the legal services agreement by failing to pay my client's legal fees in full and on time, and therefore excuse my client from any further allegations. Counsel, why did your clients not send plaintiff a copy of the probate court's quick order granting their withdrawal? Unfortunately, there's no evidence in the record, such as an email or a letter, showing that they mailed a copy of the order from the court. So there's no direct evidence of that. I also, unfortunately, don't have anything from the court showing that they mailed a copy to her. So that would seem to have prevented a lot of this dispute. Well, as the court was just noted, after that date, the plaintiff did represent herself pro se in the probate manner. In addition to filing the request for the extension, she then did file the necessary paperwork to close the estate herself. Beyond that, she then was communicating with the opposing counsel in the probate manner, and she sent them a letter acknowledging the November 9 hearing date. She had received a copy of the notice of the hearing. Counsel argued here that, again, that his client did not have notice of the November 9 hearing. That went up to the Court of Appeals in Wisconsin State Court, and they ruled that she did have notice of the November 9 hearing, in part based on her own letter where she wrote in it, I'm aware of the November 9 hearing. I'm not available, and so unless it's moved, I need to petition the court to move the hearing date. She didn't do that. She didn't attend the November 9 hearing. There was no communications between August 26, 2015, and the November 9 hearing between the plaintiff and my client about doing work or attending hearings. The only communication after that was about the unpaid bills. She stopped paying my client's bills in January. By August, they were over $80,000 in unpaid bills. No reasonable jury could find that that wasn't a material breach. So what was the total billing from the beginning of the engagement until August of 2015? So they were first retained in 2014. She paid the first six invoices on time. I don't know the exact amount. I'm not asking that. I'm asking for a ballpark. I think it's around $60,000 to $70,000. For the first six? Yeah. I have a question about timing here. In terms of whether this was a material breach, your clients have a client who had paid on time and in full for a long time, six months, and then there was a drop-off, and then there was communication about fees, and there were some payments made. Is there anything in the record about why they moved to withdraw when they did? Because at that point, it's almost as if they were leading her on as to the representation. And then there's a trigger point where the court's like, you're late closing the estates, and they're like, we're out. Isn't that prejudicial? Tell me what you'd say to that. Sure. So the first email that we have was back in April where they asked her, you haven't paid our last four bills. But the reason for the timing is on June 5th, the court entered a final order with deadlines to close the estate. And that order was sent to the plaintiff, and then there's email exchanges between the plaintiff and my client in July where she says, I don't have the money to pay you to continue to do this. I will take care of the deadline. Did she really say that, or was she just concerned about the expenditure and the dissipation of the funds? Was it, I don't have the money? Because the money was there in the estate, right? The exact words she used was, I cannot, I quote, cannot pay to have everything reviewed by you, period, end quote. And then the back and forth was, she agreed that they would take a back seat and be available only upon request. And so from there on, she, and then they said, okay, well, we're not going to do any more work until you pay our bills. And that's when she took the position that, well, she was going to dispute some of their bills, and she was going to work on putting together a list of why she thought their bills were inflated or too much or whatever she thought. And then she never did that, and she testified it was because she was too busy, and it wasn't a priority for her. And so I think it all comes out of, we have this June 5 order where certain deadlines needed to be made, then a July 20th and 21st email exchange where she says, I cannot pay you to do this. I'm going to do this myself. Take a back seat. Only be available if I ask, upon request, if I ask you to do something. Over the next month then, there's emails where they are demanding payment. I mean, she owes $80,000 at that point. She's telling them, I cannot pay you to do all of this. At that point, she's going to be handling it herself. They want to get paid. They're owed $80,000. I think they had had enough leeway with that. And so then there's exchanges right on the 24th where she had gotten the notice that the estate had not been closed by August 3rd, which is the paperwork she ultimately ended up filing in September. And that's where she said she wanted them to do it, and they said, absolutely not. We're not doing this. You owe us $80,000. We need payment. And that led to then the August 24th motion to withdraw, which was granted. I think that all of her actions after August 24th clearly shows that she did not think my clients represented her anymore. There was no communications about the case. Per their July 20th agreement, there was no request for them to do anything. There was no discussions about them attending the November 9 hearing. What about the early statements early in the representation? I think it was, I'm not sure which attorney, Olenichek, am I pronouncing that correctly? Olenichek. Olenichek said, oh, yeah, we've got to close the estate. We've got to take care of that. There were some oral statements. What do you say to that evidence? So it goes back to one of the reasons, it goes back to my argument that there's many, many reasons why this order should be affirmed. That was the plaintiff's testimony that she had this oral conversation, I believe it was with Attorney Krieger. The deadline for that filing was August 3rd of 2015. And to the extent that deadline was not met, it is barred by the statute of limitations. Any acts occurring before, I believe it's August 20th of 2015 are time barred. Six years statute of limitations apply to the plaintiff's claims. And she first filed suit on August 20th of 2021 in Connecticut. That ended up getting dismissed, but it told the statute of limitations. And so that's another wrinkle in the case where anything that occurred before August 20th of 2015 falls outside of the statute of limitations. She claims that she thought they were going to file the necessary paperwork to close the estate. She testified about this conversation earlier. The deadline was August 3rd. To the extent she complains that it wasn't filed by August 3rd, it's outside the statute of limitations. We would argue it falls under that July 20th agreement of where she said she was going to take care of all the further deadlines. And then she ultimately was the person who filed the paperwork to close the estate in August of 2015. One of the arguments that the plaintiff makes in this case is on the de novo standard. I think, as the court knows, that this court can affirm the district court summary judgment order on any basis that were raised in the lower court that was preserved. She described this as, quote, right for the wrong reasons analysis. And I just want to make sure that the court understands we don't argue or allege that the district court got it right for the wrong reasons. It got it right for one of the possible right reasons. There's many reasons. In addition to the fact that the plaintiff herself materially breached the contract and the fact that most of her complaints fall outside the statute of limitations, she had no expert. And so there are—this is a legal malpractice case. Legal malpractice in Wisconsin can arise under tort or contract. Here she alleges it arises under contract. But it's very clear under Wisconsin law that whether it arises under contract or tort, you need an expert when the issues involve specialized knowledge. Here she bases it on contract where all the contract says is that we will represent you in a dispute with your sister. Throughout her briefing, she alleges that there are specific contractual obligations that have been agreed upon. She never says where those come from or points to anything. And when it comes to what a reasonable probate attorney would do under the same circumstances in a case like this, that requires expert testimony. It requires an expert in the probate legal field to come and testify about, well, here's what is necessary to do to probate the estate and administrate the trust. Here's the deadlines that are going to come up. Here was the discussion between them. Here's what you need to do. Here's what needs to be filed, presented with a discussion or agreement where they were going to take a back seat. Here's what needed to be done. And then also when you move to withdraw, here is what a reasonable attorney would do under these circumstances. Those go to standard of care, go to whether they breached a contractual duty. But there's also causation and damages issues in this case that would have required an expert. She had no Rule 26A2 disclosures at all. And so she argues that the district court or that the probate court in the state law matter, that she would have gotten a more favorable distribution but for my client's alleged breach. And that's where a jury would be left to just guess and speculate. They'd have no basis to even understand what was necessary to be done in the probate matter and why that resulted in a less favorable result for her. In addition to liability and damages, there's also some causation issues here, as I indicated in my briefing. The fact that she had filed that petition to extend the deadlines in the probate matter and got herself two more months to close the estate gave her an opportunity to do it herself or to hire another attorney to file the necessary paperwork. She then tried to do it herself. The court sent her a letter saying, this is insufficient. I'll give you this new deadline to redo it. She acknowledges, she's testified, I received that letter from the probate court. At this point, we're in September of 2015, where the court had given her an extension, given her an opportunity, a second opportunity, and she did nothing. She didn't file anything else. She didn't hire any other attorney. She let that deadline lapse. That's when the court issued the or that is when her sister filed a motion to remove her, which led to the November 9 hearing. In terms of causation, there's cases we cite in our brief where that's an intervening cause where she has stepped up and gotten the extension to file the necessary paperwork that she believes my client should have done. That cuts off the causation in terms of a legal malpractice case. In another wrinkle in the case, her own testimony is that the probate court later on admitted he made a mistake, that she had filed the correct necessary paperwork in September to close the estate. By her own testimony, the judge made a mistake. It's really her allegation that we needed to file the necessary paperwork to close the estate, and then she attempted to file it, and then she did, but it wasn't adequate. It turns out that was a mistake made by the probate court by the plaintiff's own admission. So there's just all these problems not only with liability but causation issues and then damages, especially in a case like this where... I take it you don't think we need to reach those issues. I think you can affirm on any of these issues. I mean, the district court, I think, got it right. She owed more than $80,000. She had failed to pay for eight months. My client repeatedly emailed her and said, We're not serving as your bank anymore. You need to pay us. She didn't pay them. She owed them all this money. The contract allowed them to terminate and withdraw. I don't know where this argument comes that they couldn't terminate until after the August 24th. Plaintiff's counsel doesn't cite to the contract or any case or any law that says that's the case to the extent it's a standard of care. They don't have an expert to show it. I mean, there's multiple emails. We're not doing any more work. You owe us a lot of money. We're moving to withdraw. They did move to withdraw. And then in the probate court's order, it said their motion is granted. They're no longer representing her, and they owe no further legal obligations to her. There are many, many, many reasons to affirm the district court's order. I think the district court got it right. But to preserve all these issues, I think, as your Honor said, a lot of the arguments here defy common sense. I don't understand why the plaintiff herself, who is an attorney, thought my clients were just going to continue representing her. Thank you. Anything further, Mr. Simonson? First, I'd like to emphasize, and I know Judge Hamilton, I didn't do a particularly good job of responding on the material breach and the standard of law. You need to look at, on page 26, the restatement second of contracts. And there is no evidence in the record that even the defendants thought they were never going to get paid. And interest accrued and had been paid on all late balances. The damages they would have suffered would have been paid for. I want to just cover a couple other corrections from what I heard. The fee dispute did not arise after there were arrearages. The fee dispute arose in January when my client received bills that included a bunch of work for things that they weren't meant to do and didn't say they were going to do. That's when it started. It wasn't a question of, I'm going to come up with an excuse not to pay somebody. And indeed, the only evidence of my client's intention and likelihood to get paid is that she intended to pay them. She was required to scrutinize their bills under the June 5 order. She was required, as a fiduciary, to only pay what made sense and figured, why are they getting so hot under the collar under this? They're getting interest. She made a payment on July 30th. She's just making payments in order to say, look, I'm not walking away from this obligation, but I need clarity before I can make the payment. So that's, I think, all I wanted to raise here unless there's something else from the court. About the statute of limitations. Yes. If we buy the argument that anything, well, I think it's August 3rd, 2015, what could possibly be in the case? Well, what could possibly? First of all, there are two breaches. There's the failure to file the estate documents in a timely manner and also the failure to appear in a litigation, the same litigation matter. So the first would still be timely? Oh, it's clearly timely. Even if we don't buy the evidence on the? Well, both, yeah, I believe even the first, the contract would be timely or at least there's an issue of fact here because the court kept extending and she just figured they can get extensions. The court was very good about that and it was only on August 24th where they said, forget it, we ain't doing nothing for you, that she realized that there had been a breach. That doesn't affect, though, their failure to appear at the hearing and in the alternative basis, it must be an alternative basis for the entire judgment, which is no liability for either of those breaches for any of the defendants. And so that you can't consider on appeal here as a separate alternative basis. Thank you. Thank you, Mr. Summers. The case is taken under advisement.